FILED

2016 Nov-09  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GARY TAYLOR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:15-CV-1925-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

---

## MEMORANDUM OPINION

Plaintiff Gary Taylor ("Mr. Taylor") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Mr. Taylor timely pursued and exhausted his administrative remedies available before the Commissioner. The case

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

is thus ripe for review under 42 U.S.C. § 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Taylor was 45 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 11). He has completed the twelfth grade. (Tr. 21). His past work experience includes employment as (1) a tree trimmer helper; (2) a van driver; (3) a material handler; and (4) a delivery driver. (Tr. 20). Mr. Taylor claims he became disabled on September 4, 2012,[3] due to a gunshot wound to the left leg and multiple stab wounds to the abdomen. (Tr. 11, 13-14). His last period of work ended on September 4, 2012. (Tr. 13).

On June 14, 2012, Mr. Taylor protectively filed a Title II application for a period of disability and DIB. (Tr. 175-76). He also protectively filed a Title XVI application for SSI on that date. (Tr. 177-82). On September 25, 2012, the Commissioner initially denied these claims. (Tr. 70-71). Mr. Taylor timely filed a written request for a hearing on November 8, 2012. (Tr. 96). The ALJ conducted a video hearing on the matter on April 8, 2014. (Tr. 11); (*see also* Tr. 26-62). On July 1, 2014, the ALJ issued his opinion concluding Mr. Taylor was not disabled and

---

[2]  42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]  Mr. Taylor initially claimed an onset date of May 1, 2012, within both applications. (Tr. 11). He subsequently amended his onset date to September 4, 2012, at his disability hearing held on April 8, 2014. *Id.*

denying him benefits. (Tr. 21). Mr. Taylor then timely petitioned the Appeals Council to review the decision on July 18, 2014. (Tr. 4-6). On August 31, 2015, the Appeals Council issued a denial of review on his claim. (Tr. 1-3).

Mr. Taylor filed a Complaint with this court on October 30, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 23, 2016. (Doc. 7). Mr. Taylor filed a supporting brief (Doc. 12) on May 6, 2016, and the Commissioner responded with her own (Doc. 13) on June 3, 2016. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of September 29, 2016.

4

disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the

[Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.   Mr. Taylor met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 13).

2.   He had not engaged in substantial gainful activity since September 4, 2012, the alleged disability onset date. *Id.*

3.   He had the following severe impairments:  history of gunshot wound to the left leg with vascular damage and femoral deformity; history of multiple stab wounds with left diaphragm rupture, splenic laceration, and small bowel and colon injuries, early airways disease, and history of right rotator cuff repair. *Id.*

4.   He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

5.   He had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he can never climb ladders, ropes or scaffolds; can never crawl; can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; can occasionally reach overhead with the dominant right upper extremity; must avoid all exposure to extreme heat and cold, wetness, and humidity; must avoid exposure to even moderate levels of fumes, odors, dusts, gases, and poorly-ventilated areas; and must avoid all exposure to

6

unprotected heights, use of hazardous machinery, and operational control of moving and machinery. *Id.*

6.   He was unable to perform any past relevant work. (Tr. 19).

7.   He was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date, and subsequently changed to a different younger age category of 45-49. (Tr. 19-20).

8.   He had at least a high school education and was able to communicate in English. (Tr. 20).

9.   Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills. *Id*.

10.  Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform. *Id.*

11.  Mr. Taylor had not been under a disability, as defined in the Social Security Act, from September 4, 2012, through the date of this decision and, consistent with that finding, both his DIB and SSI claims were denied. (Tr. 21).

## **ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the Commissioner." *Walden*, 672 F.2d at 838 (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

Mr. Taylor urges this court to reverse the Commissioner's decision to deny his benefits on July 1, 2014, because he contends the Commissioner's decision is not supported by substantial evidence and is inconsistent with applicable law. (Doc. 12). In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the correct legal standard.

I.   **THE ALJ'S CONCLUSION THAT MR. TAYLOR WAS NOT DISABLED IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Mr. Taylor asserts that 1) the ALJ's opinion is not based upon substantial evidence, and 2) the ALJ's opinion was inconsistent with applicable law. (Doc. 12 at 1). Specifically, Mr. Taylor asserts that the ALJ failed to properly evaluate the credibility of his subjective pain complaints. (Doc. 12 at 4). The court disagrees.

A.   **The ALJ gave adequate reasons for discounting Mr. Taylor's subjective complaints about pain and other disabling symptoms.**

A claimant's subjective complaints alone are not conclusive evidence of a

---

[5] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

disability. 42 U.S.C. § 423(d)(5)(A). The Regulations, instead, require that the claimant's subjective complaints must be supported by the medical evidence of record, which must show that the claimant suffers from a medical condition that is reasonably expected to produce the alleged level of pain. *Id.*; *cf. Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is *itself* sufficient to sustain a finding of disability." (emphasis in original) (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987))).

In the Eleventh Circuit, a claimant attempting to establish disability through pain and other subjective disabling symptoms must satisfy the following framework: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Heppell-Libsansky v. Commissioner of Social Security*, 170 F. App'x 693, 698-99 (11th Cir. 2006) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Holt*, 921 F.2d at 1223 ("The standard also applies to complaints of subjective conditions other than pain." (citing *Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir. 1989))).

9

Additionally, the ALJ must give specific and adequate reasons for discrediting a claimant's subjective pain testimony, *Holt*, 921 F.2d at 1223 (citing *Hale*, 831 F.2d at 1011), and the failure to do so means "that the testimony [must] be accepted as true." 921 F.2d at 1223 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ determined that Mr. Taylor provided sufficient medical evidence of his underlying medical conditions and, thus, satisfied the first prong of the Eleventh Circuit framework for evaluating pain. The confirming medical evidence discussed by the ALJ included Mr. Taylor's "two traumatic injuries in February 1999 and September 2012," "[a] right shoulder injury in 2007[,]" and "early airway disease." (Tr. 17); (*see also generally* Tr. 314-85, 440-829).

Mr. Taylor's 1999 traumatic injury was from a gunshot that caused "a wound to his left thigh" (Tr. 15) and "a mid-shaft left femur deformity" that x-rays taken in 2012 revealed (Tr. 17); (*see also* Tr. 852 (reporting Mr. Taylor's use of a prescribed cane to assist him with walking)). Mr. Taylor's right shoulder injury resulted in two separate rotator cuff surgeries–one in 2007 and a second one in 2010. (Tr. 17).

Mr. Taylor's 2012 post-application injuries were caused by stab wounds. (Tr. 16). More specifically, he "suffered a left diaphragm rupture, splenic laceration, and small bowel and colon injuries[,]" underwent multiple surgeries, and remained

10

hospitalized for over a month. (Tr. 16). Finally, Mr. Taylor's early airway disease was substantiated by pulmonary function testing conducted in November 2013. (Tr. 17); (*see also* Tr. 836 ("Severe reduction in mid flows suggesting early airways disease, mild reduction in DLCO.[6] Lung volumes are low normal.")).

Based upon these underlying conditions, Mr. Taylor claimed to suffer from disabling residual pain and other subjective symptoms. For example, Mr. Taylor testified during his hearing that he has difficulty sitting and must lie down most of the time. (Tr. 43, 48-49); (*see also* Tr. 15 (summarizing Mr. Taylor's hearing testimony to include "his whole body hurts, that he must use a cane to walk, that he cannot stand or walk long, that he has problems sitting for long, and that he must spend most of his time lying down")).

The ALJ addressed Mr. Taylor's subjective complaints under the second prong of the framework:

> After a thorough review of the evidence, I find the claimant's medically determinable impairments could reasonably have been expected to produce the alleged symptoms, but the alleged intensity, persistence, duration, and impact on functioning are not credible or consistent with the totality of the evidence.

(Tr. 15 (emphasis added)); (*see also* Tr. 17 ("I have no doubt that the claimant suffers

---

⁶   The abbreviation "DLCO" stands for "Diffusing Capacity of Carbon Monoxide" as reported online at http://noairtogo.tripod.com/gloss.htm#D.

residual pain and limitations due to his left leg gunshot wound and vascular problems.
. . . Nevertheless, other aspects of the claimant's case call into question the alleged
severity of his limitations.")). Therefore, the ALJ only partially credited Mr. Taylor's
subjective symptoms.

Moreover, the ALJ provided adequate rationale for discounting Mr. Taylor's
credibility concerning the severity of his pain and other limitations. For example, the
ALJ relied on Mr. Taylor's undermining earning records and pointed out that Mr.
Taylor was able to earn over $11,000 during the same year he suffered the gunshot
wound. (Tr. 17). Mr. Taylor also was able to resume working in 2003 after being
approved for disability benefits in 2001 on account of his 1999 leg injury. (Tr. 17).
This 1999 earning information and subsequent ability to work in 2003 cast significant
doubts about the gravity of Mr. Taylor's subjective symptoms tied to this <u>same</u> leg
impairment <u>in 2012</u>.

The ALJ also underscored Mr. Taylor's ability to work gainfully from 2004
through 2012, despite claiming residual pain or other disabling symptoms attributable
to his left leg injury. (Tr. 18). As the ALJ more specifically reasoned why Mr.
Taylor's demanding pre-onset work history called his purported high degree of pain
into question:

As noted below, the vocational expert testified that he performed work

at the medium to heavy exertional level during this time. The claimant also testified that he lost his last job as a delivery driver for Schwan's because of a DUI, rather than because of any limitations in his ability to perform his work activities. He filed for benefits only six weeks after losing this job. <u>I cannot find credible his implied allegation that he thus went from being able to perform medium to heavy work to being unable to perform any work during this 6-week period</u>.

(Tr. 18 (emphasis added)). The six-week period referenced by the ALJ pertains to Mr. Taylor's initial onset date of May 1, 2012, and his disability application date of June 12, 2012. (Tr. 11).

The improbability that Mr. Taylor's 1999 leg injury caused him to rapidly deteriorate from being physically able to perform medium to heavy work to no work at all over that short six-week period in 2012 adequately supports the ALJ's finding that Mr. Taylor was exaggerating his subjective symptoms connected to this impairment. This same period of gainful employment followed by such a swift and suspiciously-timed decline in vocational functioning is also at odds with the claimed intensity of Mr. Taylor's residual pain from his rotator cuff surgeries in 2007 and 2010.

Regarding Mr. Taylor's pain and other symptoms caused by his September 2012 stab wounds postdating his DIB and SSI applications, the ALJ pointed out that Mr. Taylor did not seek aid from a pain specialist until June 2013, and even then, he only saw this provider a handful of times. (Tr. 18). The ALJ appropriately reasoned

that this pain treatment history made Mr. Taylor's claim that he was totally disabled by his pain and other subjective symptoms not fully credible.

The ALJ additionally discussed how Mr. Taylor's subjective complaints were contradicted by observations made during a consultative examination performed by Dr. David Gordon ("Dr. Gordon") on June 6, 2014. Dr. Gordon reported that Mr. Taylor had no problems sitting and that he was able to get on and off of the examination table without any help. (Tr. 852). Concerning Mr. Taylor's pulmonary impairment, Dr. Gordon noted that Mr. Taylor's lungs were "[c]lear without wheezes, rales, rhonchi, or rubs" and that Mr. Taylor exhibited "[g]ood breath sounds in the basis." (Tr. 851). Dr. Gordon's contrasting examining notes identified and generally described by the ALJ (Tr. 17) further sustain his decision not to fully credit Mr. Taylor's subjective limitations as testified to during the hearing.

The ALJ also explained that Mr. Taylor's list of filled prescriptions reported as of November 6, 2013, undercuts his subjective claim of disabling pain. (*See* Tr. 305-06). Mr. Taylor was prescribed limited narcotics for the time period spanning from June 19, 2012, to April 25, 2013, and in fact was more frequently prescribed nonsteroidal anti-inflammatory drugs ("NSAIDs") instead of narcotics to treat his

pain.[7] *Id.* These mostly moderate medications prescribed by Mr. Taylor's providers lend further support to the ALJ's finding that Mr. Taylor's subjective pain testimony was not fully credible. (*See* Tr. 18 (recognizing Mr. Taylor's "limited pain medications")). Finally, in light of the numerous and adequately described reasons relied upon by the ALJ to discount Mr. Taylor's subjective complaints, no reversible error occurred and the Commissioner is due to be affirmed.

**B.     The ALJ's opinion is consistent with the applicable law.**

Mr. Taylor additionally argues that the ALJ erred as a matter of law in finding that he was not disabled. (Doc. 12 at 1). Mr. Taylor more particularly contends that the ALJ improperly failed to award him disability benefits because he was able to go to the grocery store and participate in other limited daily activities. (*Id.* at 10); (*see also* Tr. 18 ("[Mr. Taylor] also testified that he is able to shop for groceries and prepare food.")).

In *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997), the Eleventh Circuit expressed disbelief that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . . ." *Lewis*, 125 F.3d at 1441. Mr. Taylor's argument is that, in light of *Lewis*, his ability to grocery shop

---

[7] While Mr. Taylor's pharmacy expense summary includes entries for Lortab and other nerve pain medications, such stronger prescriptions only appear periodically on the printout rather than on a regular basis. (Tr. 305-06).

for his household does not disqualify him from rightfully receiving disability benefits. However, as illustrated within the first section of the court's analysis, the ALJ's opinion is based upon substantially more evidence than merely Mr. Taylor's ability to grocery shop and engage in other limited daily activities. Consequently, the ALJ did not run afoul of *Lewis* or otherwise incorrectly apply the law and his decision is due to be affirmed. *Cf. Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. . . . Substantial evidence is more than a scintilla, but less than a preponderance.").

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, substantial evidence supports the Commissioner's disability decision and proper legal standards were applied. Accordingly, the court will affirm by separate order.

**DONE** and **ORDERED** this 9th day of November, 2016.

_VEHopkins_

**VIRGINIA EMERSON HOPKINS**
United States District Judge